UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
WESCO DISTRIBUTION, INC.,

                        Plaintiff,                          06 Civ. 13444 (PKC)

        -against-

                                             MEMORANDUM
                                           <u>AND ORDER</u>
ALVIN ANSHELEWITZ and AL'S
BEST ELECTRIC CO., INC.,

                        Defendants.
------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

          In this diversity action, plaintiff Wesco Distribution, Inc. ("Wesco") has

moved for summary judgment pursuant to Rule 56, Fed. R. Civ. P., against defendant

Alvin Anshelewitz.  By virtue of a personal guaranty purportedly executed by

Anshelewitz, Wesco seeks to collect the principal amount of $150,498.40, plus service

charges, allegedly owed to it by defendant Al's Best Electric Co., Inc. ("Al's Best").

Anshelewitz has cross-moved <u>in</u> <u>limine</u>, pursuant to Rule 103, Fed. R. Evid., for a ruling

excluding the purported personal guaranty.  For the reasons outlined below, the Wesco

motion for summary judgment is granted and the Anshelewitz <u>in</u> <u>limine</u> motion is denied.

        I.      <u>Background</u>

          For the purposes of plaintiff's summary judgment motion, I have accepted

as true defendant's version of the facts and such other facts offered by plaintiff that are

not disputed by defendant.  All reasonable inferences have been drawn in defendant's

favor.

Al's Best is an electrical contractor which has been in business for more than 25 years. (Anshelewitz Aff't at 2.) Alvin Anshelewitz is the president and sole shareholder of Al's Best; his sons, Chad and Stephen Anshelewitz, were at all relevant times vice presidents of Al's Best.[1] (Cope Aff't, Exh. A.) Al's Best filed for bankruptcy protection under Chapter 11 in June 2007. (Anshelewitz Aff't at 2; Cope Reply Aff't, Exh. P.)

In or around November 2005, Al's Best requested that Wesco supply it with electrical materials for its various construction projects. (Cope Aff't ¶ 8.) Specifically, an employee of Al's Best, known only as, Ralph, came to Wesco's Fort Lauderdale, Florida office and inquired about what it would take to open a credit account for Al's Best. (Cope Reply Aff't ¶ 21.) Wesco supplied Ralph with a two-page document titled "Application For Business Credit." (Id.) The first page of the document contained spaces for basic information regarding the company seeking credit as well as a "Personal Guaranty" paragraph. (Cope Aff't, Exh. A.) The first page of the document also contained two separate signature lines, one calling for the signature of the applicant seeking credit and one for the person personally guaranteeing the amount of indebtedness to Wesco by the applicant. (Id.) Page two of the document contained the terms of the credit application (also referred to therein as the "credit agreement") and provided a space for the date and the applicant's initials at the tope of the page. (Id.)

A copy of the first page of the document was delivered to Wesco's Fort Lauderdale office by the same Al's Best employee who had made the initial request for a credit account. (Cope Aff't ¶ 12; Cope Reply Aff't ¶ 21.) The single page had two

---

[1] Anshelewitz testified that although he is the sole shareholder of Al's Best "on paper," he "verbally" gave his sons Chad and Stephen some interest in the company. The Al's Best bankruptcy petition, however, lists Alvin Anshelewitz as owning "100%" of the company's shares. (Cope Reply Aff't, Exh. P.)

sections to it: a personal guaranty and a credit application. (Cope Aff't, Exh. A.) Below the text of the terms of the personal guaranty portion of the document appeared the printed name "Al Anshelewitz," with a signature appearing directly below his printed name. (Id.) The signature was dated November 17, 2005. (Id.) Below the guaranty portion and signature was a credit application signed by Chad Anshelewitz, "a duly authorized representative of applicant" and dated November 17, 2005. (Cope Aff't ¶ 11, Exh. A; Anshelewitz Dep. at 73-77.)

After receiving only the first page of the two-page document, Wesco advised Al's Best that no action could be taken on the proposed credit account until page two of the document was initialed and delivered to Wesco. (Cope Aff't ¶ 12; Cope Reply Aff't ¶ 21.) Page two of the document was delivered the next day, initialed at the top of the page in ink. (Id.) Al's Best never submitted and Wesco never received a version of page one of the credit agreement signed in ink. (Id.; Cope Reply Aff't ¶ 22.)

The completed credit application and personal guaranty submitted by Wesco in support of summary judgment lists "Al's Best Electric" as the "Applicant," "Al Anshelewitz" as "President" of Al's Best and Chad and Stephen Anshelewitz as "V.P.[s]." Wesco asserts it required Al's Best's president, Alvin Anshelewitz, to personally guaranty the debts incurred by Al's Best by signing beneath the personal guaranty paragraph. (Cope Aff't ¶¶ 9-10.) It was not uncommon for Wesco to require new customers to have their principals sign the personal guaranty section of the credit application. (Cope Aff't ¶ 10.)

The authenticity of the credit application, signed on behalf of Al's Best by Chad Anshelewitz is not disputed. Nor is it disputed that Al's Best did, in fact, begin

purchasing electrical materials from Wesco on credit subsequent to the delivery of the

executed, two-page document to Wesco.  Defendant Anshelewitz contends that there is a

material issue of fact as to whether he signed the guaranty.

The "Personal Guaranty" states, in part, as follows:

> In consideration of credit being extended by Wesco to Applicant, I/We
> hereby personally guarantee to Wesco payment of any obligation of
> Applicant, and I/We hereby agree to be bound to pay Wesco on demand
> any sum that may become due to Wesco from Applicant.  It is understood
> and agreed that this guaranty shall be a primary, absolute and contuing and
> irrevocable guaranty and indemnity for such indebtedness and will not be
> subject to any counterclaims, set-offs, other deductions or defenses.  I/We
> hereby waive notice of default, non-payment, non-performance . . . . This
> Guaranty will not be released, discharged, terminated, modified, affected
> or impaired by any occurrences or circumstances whatsoever, including
> without limitation, any insolvency, bankruptcy, reorganization or other
> similar proceeding affecting Applicant or its assets. . . .

(Id.)

From February 2006 through July 2006, Al's Best ordered, usually by

telephone, electrical materials from Wesco which were delivered to various construction

sites from Wesco's Florida location and from two of Wesco's New York locations.

(Cope Aff't ¶¶ 21, 29; Mayer Aff't ¶¶ 4, 12; Anshelewitz Aff't at 2.)  Al's Best did not

create and transmit written purchase orders.  (Anshelewitz Aff't at 2.)

After receiving an order from Al's Best, Wesco would deliver the

electrical supplies to the applicable construction site and a representative from Al's Best

would sign for and accept the deliveries.  (Id.)  Wesco sent invoices to Al's Best for the

sales and delivery of the electrical materials and issued Al's Best monthly account

statements reflecting the amount owed by Al's Best to Wesco.  (Cope Aff't ¶¶ 23-24;

Mayer Aff't ¶¶ 6-7.)  If material was rejected or otherwise returned, Wesco's policy was

to either not send an invoice to the customer or apply a credit the customer's account.

(Cope Reply Aff't ¶ 12 n.3.)  Wesco did, on one occasion, issue a credit to Al's Best's

account in the amount of $23,223.01 when it accepted a return of materials it recovered

after being notified by the general contractor at a construction site that Al's Best had

abandoned a trailer full of materials.  (Cope Reply Aff't ¶ 12 n.3, Exh. L.)  In total, the

amount Wesco invoiced Al's Best for which it has not received payment is $150,498.40.

(Cope Aff't ¶¶ 26,35; Mayer Aff't ¶¶ 9, 17, 19.)

     Prior to the institution of this litigation, Al's Best did not object to or

question any of the invoices or statements of account it received from Wesco.  (Cope

Aff't ¶¶ 25, 27, 33; Cope Reply Aff't ¶¶ 18-19; Mayer Aff't ¶¶ 8, 10, 13; Mayer Reply

Aff't ¶¶ 4-10.)

     Wesco filed this action on November 22, 2006 (Doc. # 1) and its amended

complaint, the operative pleading, was filed on January 26, 2007.  (Doc. # 6.)  The

amended complaint asserts, <u>inter alia</u>, claims for the principal amount allegedly owed by

Al's Best plus interest, service charges, attorney's fees and collection expenses.  (Cope

Aff't ¶ 36.)  It seeks payment from both Al's Best as the primary debtor and from Alvin

Anshelewitz as guarantor.  Because Al's Best is in bankruptcy, Wesco seeks summary

judgment only with respect to its claims against defendant Anshelewitz for the principal

amount allegedly owed by Al's Best plus service charges.[2]  The claimed service charges

are based on a provision in the signed credit application which states that payment by

Al's Best to Wesco was to be "net 30 days, and that past due balances are subject to

service charge at the rate of 1 and 1/2% per month . . . ."  (Cope Aff't, Exh. A.)

     In or about the time when the personal guaranty was allegedly executed,

---

[2] Under New York law, a finance or service charge is considered part of the purchase price rather than a
penalty or interest.  <u>See</u> <u>Zachary v. R.H. Macy & Co.</u>, 31 N.Y.2d 443, 457 (1972); <u>Price Bros. Co. v. Olin
Const. Co.</u>, 528 F. Supp. 716, 723 (W.D.N.Y. 1981).

defendant Anshelewitz was suffering from a serious illness which required him to cease working for Al's Best "on a regular basis" and, to relinquish control of the company to his two sons, Chad and Stephen. (Anshelewitz Dep. at 14-15; Anshelewitz Aff't at 2.) Because Anshelewitz "almost never went into the company's office" during that period, he questions whether he could have executed a personal guaranty. He further argues that because the guaranty relied upon by the plaintiff is a photocopy, it is an indication that it is not authentic. He has no recollection of signing the personal guaranty, yet he does not contend the signature on photocopy of the personal guaranty is a forgery. Nor does he contend that the signature on the guaranty is not his; rather he maintains he cannot be certain that the signature is his despite his concession that it indeed resembles his signature. (Anshelewitz Dep. at 82, 87-89.) On the basis of Wesco's failure to produce an ink-signed original, Anshelewitz seeks to have this Court deny summary judgment to plaintiff and exclude the personal guaranty from evidence.

Apart from the validity of the guaranty, Anshelewitz argues that his son, Stephen, was personally involved with the projects for which Al's Best purchased electrical materials from Wesco and, upon his post-litigation review of the invoices, statements of account and proofs of deliveries, he has determined that the amount Wesco claims it is owed by Al's Best is inflated. Two reasons are given in support of that assertion. First, Stephen Anshelewitz states in an affidavit submitted in opposition to summary judgment that the invoices reflect materials that were either delivered unacceptably late or not at all. (Anshelewitz Aff't at 3.) Second, he states that some of the proofs of delivery contain no signatures indicating acceptance of the materials by Al's Best, while others contain signatures which he does not recognize as those of Al's Best

employees authorized to accept deliveries on behalf of the company.  (Id.)  He opines in his affidavit that "the only conclusion to be drawn is that Al's Best never received the merchandise reflected theron, and the invoices, therefore are suspect."  (Id.)  In total, Steven Anshelewitz asserts that $136,983.85 of the $150,498.40 for which invoices were sent by Wesco is not properly payable by Al's Best because of the alleged deficient deliveries.  Defendant Anshelewitz contends that this asserted set-off presents a material issue of fact on the amount of damages, precluding summary judgment.  Wesco asserts that the absence of an objection or dispute of the amount of the invoices at the time they were rendered precludes a challenge at this juncture.

II.     Discussion

a.  Forum Selection Clause

The personal guaranty and credit application at issue contain both a choice of law clause and a mandatory forum selection clause.  Specifically, paragraph 9 on page two of the credit application and guaranty states that the "Agreement" shall be construed under Pennsylvania law and that the "sole and proper venue" for all disputes is either "the state [or] Federal Court[] situated in Pittsburgh, Pennsylvania."  (Cope Aff't, Exh. A at 2, ¶ 9.)

Although a defendant may challenge a plaintiff's choice of forum on the basis of a forum selection clause, "[t]he federal courts traditionally have accorded a plaintiff's choice of forum considerable deference."  In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989); see also Ackerley Media Group, Inc. v. Sharp Electronics Corp., 170 F. Supp. 2d 445, 451 (S.D.N.Y. 2001).  Here, defendant Anshelewitz has not sought enforcement of the forum selection clause and the Court declines to transfer the case sua

sponte to the Western District of Pennsylvania. See e.g. Lead Indus. Ass'n, Inc. v. OSHA, 610 F.2d 70, 79 n.17 (2d Cir. 1979). Defendants' principal place of business is in New York City where plaintiff also has an office. As such, the Court defers to plaintiff's choice of forum.

b.  Choice of Law

"In the absence of a violation of a fundamental state policy, New York courts generally defer to the choice of law made by the parties to a contract." Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51, 55 (2d Cir. 1991). Choice of law provisions may, however, be ignored "where the most significant contacts with the matter in dispute are in another State." Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 52 (2d Cir. 1984). In addition, "even when the parties include a choice-of-law clause in their contract, their conduct during litigation may indicate assent to the application of another state's law." Cargill, 949 F.2d at 55 (citing Heller, 730 F.2d at 52.).

In Cargill, a contract case, the parties agreed in the contract that disputes regarding the agreement would be decided under Massachusetts law. (Id.). Both parties, however, relied on New York law in briefing their arguments in both the district court and the Second Circuit. (Id.) Moreover, "nearly all the significant contacts" regarding the dispute were located in New York. Thus, the Second Circuit concluded that both parties "expect this case to be decided in accordance with New York law" and therefore the court "acquiesce[d] [to] . . . the parties' expectation." Id.

Here, both parties have briefed their arguments under New York law without addressing the choice of law clause. Thus, as in Cargill, the parties expect their

dispute to be decided under New York law. In addition, significant contacts regarding the contract and the dispute occurred in New York. True, significant contacts also occurred in Florida, but the record reveals none occurring in Pennsylvania, save for plaintiff's principal place of business being located there. Significantly, there is nothing in the briefing of the parties that would lead this Court to believe that Pennsylvania law is different from New York law on any issue material to the resolution of this action. Accordingly, the Court will apply New York law.

c. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief. A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts asserted by the movant. Rule 56(e)(2), Fed. R. Civ. P. In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as

to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotations and citations omitted); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary judgment as the record warrants. Rule 56(c), Fed. R. Civ. P. In the absence of any disputed material fact, summary judgment is appropriate. Id.

d. Al's Best's Underlying Liability for an Account Stated

In order to prove the liability of a guarantor, a plaintiff must first prove the liability of the underlying obligor. See Consol. Rail Corp. v. Primary Indus. Corp., 901 F. Supp. 765, 768 (S.D.N.Y. 1995) ("In order to recover under the terms of [a] guarantee, the obligee must establish a prima facie case by providing proof of (1) the underlying obligation, (2) the guarantee and (3) the failure by the guarantor to make payment . . . ."); see also Kornfeld v. NRX Tech., Inc., 93 A.D.2d 772, 773 (1st Dep't 1983), aff'd, 62 N.Y.2d 686 (1984). Thus, Wesco cannot establish Anshelewitz's liability on the personal guaranty unless it can first establish the underlying liability of Al's Best.

Under both New York and federal law, liability for an "account stated" arises from "a promise by a debtor to pay a stated sum of money which the parties had

agreed upon as the amount due."  Lankler Siffert & Wohl, LLP v. Rossi, 287 F. Supp. 2d

398, 407 (S.D.N.Y. 2003) (quoting Ally & Gargano, Inc. v. Comprehensive Accounting

Corp., 615 F. Supp. 426, 429 (S.D.N.Y. 1985)); White Diamond Co., v. Castco, Inc., 436

F. Supp. 2d 615, 623 (S.D.N.Y. 2006).  An account stated may be based upon invoices

that are submitted on a regular basis, Lankler, 287 F. Supp. 2d at 624, or upon monthly

account statements.  Citibank (South Dakota) N.A. v. Jones, 272 A.D.2d 815, 816 (3d

Dep't 2000).

       A plaintiff is entitled to summary judgment on an account stated if it

makes a prima facie showing that it sent regular invoices or statements to a debtor and

that the debtor did not object to such invoices or statements within a reasonable time.  Id.

"It is incumbent upon a party in receipt of an account to examine the statement and make

all necessary objections . . . within a reasonable amount of time."  Lankler,  287 F. Supp.

2d at 407 (internal quotation marks and citation omitted).  "An objection to an account

stated that is first made only after litigation on the account stated has been commenced is,

as a matter of law, not made within a reasonable time."  White Diamond, 436 F. Supp. 2d

at 623 (citing Regent Partners, Inc. v. Parr Dev. Co., 960 F. Supp. 607 (E.D.N.Y.), aff'd,

131 F.3d 131 (2d Cir. 1997) (unpublished opinion)).  A party's failure to object to

invoices and statements of account can be construed as "agreement that the bills sent to

[the party] . . . were correct and would be paid."  Speciner v. Parr, 252 A.D.2d 554, 555

(2d Dep't 1998).

       Once a plaintiff has established a prima facie claim for an account stated,

the defendant must come forward with documentation of any alleged objection made to

the account.  White Diamond, 436 F. Supp. 2d at 624.  "Unsubstantiated claims of oral

objections do not create a material issue of fact, and are insufficient to defeat summary judgment . . . ." Id. (citing Morrison Cohen Singer & Weinstein, LLP v. Ackerman, 280 A.D.2d 355, 356 (1st Dep't 2001)).

Wesco has submitted account statements and affidavits of its branch managers in Florida and New York attesting to the unpaid amounts due for materials delivered and accepted by Al's Best at construction sites in New York and Florida. (Cope Aff't ¶¶ 23-24, 31-32, Exhs. B, C; Mayer Aff't ¶¶ 6-7, 14-15, Exhs. I, J.) In addition, Wesco has provided evidence through both its moving affidavits and reply affidavits that Al's Best never objected to Wesco's invoices or statements of account or returned materials for which it was invoiced or did not received credit.[3] (Cope Aff't ¶¶ 25, 27, 33; Cope Reply Aff't ¶¶ 4-8, 18-19; Mayer Aff't ¶¶ 8, 10; Mayer Reply Aff't ¶¶ 4-10.)

Conversely, defendant Anshelewitz has failed to come forward with any admissible evidence disputing the evidence put forward by Wesco that Al's Best never objected to its invoices or statements of accounts. In fact, the only evidence defendant Anshelewitz has submitted in opposition to summary judgment is an excerpt from his own deposition transcript and the affidavit of his son, Stephen, neither of which disputes

---

[3] Plaintiff noted in its moving papers that it was only submitting account statements in support of summary judgment "[b]ecause the invoices and proofs of delivery for all of the materials [Wesco] supplied to Al's Best are voluminous . . . ." Plaintiff further noted, however, that "if Anshelewitz raises any issue as to any specific invoice or proof of delivery . . . all of which documents have been made available to Anshelewitz in discovery . . . we will provide same to the Court." (Cope Aff't ¶ 7 n.1.) Defendant Anshelewitz, did, in fact, raise issues with regard to specific invoices and proofs of delivery and those "voluminous" documents were annexed to plaintiff's reply affidavits. Thus, the Court's consideration of those documents submitted in reply is not improper or unfair to defendant because "reply papers may properly address new material issues raised in the opposition papers . . ." Bayway Refining Co. v. Oxygenated Marketing and Trading A.G., 215 F.3d 219, 226-27 (2d Cir. 2000) (rejecting objection to district court's consideration of evidence submitted with reply papers rather than with moving papers because evidence was submitted in response to new argument made in opposition and because objecting party: 1) was not surprised by new evidence; 2) did not move for leave to file a sur-reply; and 3) did not claim to have any contrary evidence to introduce "even if it were given an opportunity to proffer it.").

Wesco's contention that it regularly sent invoices and statements of account to Al's Best for materials shipped at Al's Best's direction or that Al's Best never objected to the invoices or statements of accounts. Wesco has thus established the underlying liability of Al's Best.[4] See Consol. Rail Corp., 901 F. Supp. at 768.

e. The Guaranty is Valid

To recover from a guarantor, a plaintiff must also prove the existence of a guaranty as well as a failure to pay under the guaranty. See Id. Plaintiff has come forward with a copy of a guaranty of the debts of Al's Best running in favor of plaintiff and signed by defendant Anshelewitz. There is no dispute that Wesco has not been paid pursuant to the guaranty by Anshelewitz or directly by Al's Best for the amounts stated in the invoices and statements of account. Defendant Anshelewitz argues that there is a genuine issue of material fact as to whether he personally guaranteed the debts of Al's Best. In opposition to plaintiff's evidence on this summary judgment motion, defendant has come forward with his deposition testimony wherein he stated that the signature on the copy looked like his, but that he didn't remember signing it. Specifically, Anshelewitz testified as follows:

> Q.      Is that your signature?
>
> A.      Looks like my signature, yes.
>
>           * * * *
>
> Q.      Now, you testified that the signature under the guarantee line on Plaintiff's Exhibit 4 looks like your signature; correct?
>
> A.      Looks like it, yes.
>
> Q.      You don't recall one way or the other whether you signed it; is that correct?

---

[4] Wesco was unable to locate proofs of delivery for four of the invoices which together total $135.70. Those invoices, however, were submitted and accepted by Al's Best without objection. (Cope Reply Aff't ¶ 7 n.2.)

|   |   |
|---|---|
| A. | I don't recall signing it. |

* * * *

|   |   |
|---|---|
| Q. | It looks like your signature, and you don't recall signing it; is that correct? |
| A. | That's correct. |
| Q. | And are you contesting that you signed that document, sir? |
| A. | I don't understand the question. |
| Q. | It looks like your signature? |
| A. | Looks like it.  But I don't remember signing it. |
| Q. | Is it your signature? |
| A. | I don't know. |

(Anshelewitz Dep. at 82, 87-89.)[5]

Anshelewitz's inability to confirm or deny his signature on the guaranty does not, in the face of plaintiff's evidence, create a genuine issue of fact for trial. Plaintiff's proof establishes defendant Anshelewitz was president and the principal shareholder of Al's Best.  Al's Best desired to do business with Wesco on a credit basis and, in fact, did do business with Wesco on a credit basis.  Al's Best delivered to Wesco a single page with two portions: a personal guaranty and a credit application.  Defendant Al Anshelewitz does not dispute that Chad Anshelewitz signed the credit application on the single page purporting to have Al Anshelewitz's signature approximately two inches above Chad's signature.  According to Wesco's evidence, which has not been disputed, Chad Anshelewitz's signature was delivered by Al's Best simultaneously with Al Anshelewitz's signature on the same page.

Defendant Anshelewitz endeavors to create a dispute as to the authenticity

---

[5] Defendant Anshelewitz also testified that he never asked his son, Chad, the signer of the credit application, how his (defendant Anshelewitz's) signature ended up on the guaranty.  (Id. at 90.)  In addition, when he was shown his signature on his own driver's license, defendant Anshelewitz stated, "I don't remember signing [my driver's license] either."  (Id.)

of his signature by his inability to confirm or deny that it is his signature. He also cites to his evidence of illness during the period. No showing has been made that illness precluded him from signing documents. He acknowledges that the signature "looks like" his and he does not deny that he signed the document. Defendant's evidence, viewed in a light most favorable to him, would not permit a reasonable jury to find in his favor.

In Lone Star Indus., Inc. v. Nelstad Material Corp., 811 F. Supp. 147, 149 (S.D.N.Y. 1993), the court granted summary judgment to plaintiff who sued defendant on an unpaid personal guaranty despite the defendant's claim that he did not recall signing the guaranty. In so concluding the court stated:

> [Defendant] argues that his failure to recall signing the note creates an issue of fact barring summary judgment to [plaintiff], which bears the burden of proof on this element of its claim. I find no genuine issue of material fact, since [defendant], who does not claim inability to recognize his own handwriting, concedes that the signature on the guarantee resembles his signature and does not deny having signed the document. The surrounding facts corroborate the reasonableness of the conclusion that the signature resembling [defendant's] on the guarantee is in fact that of [defendant].

Id.; see also Stern v. Espeed, Inc, 06 Civ. 958, 2006 WL 2741635, at *2 (S.D.N.Y. Sept. 22, 2006) ("In the absence of any other facts casting doubt on whether [the party] signed the agreement [the party's] lack of recollection of signing the agreement is insufficient to defeat defendant's motion [to dismiss].").

Here, as in Lone Star, defendant claimed no inability to recognize his own signature and conceded that the signature on the guaranty resembled his own. No facts or surrounding circumstances cast doubt on the logic in seeking and obtaining a personal guaranty from the president and principal shareholder of a company seeking to do business on credit. See Bombardier Capital, Inc. v. Richfield Housing Center, Inc., Nos. 91-CV-750, 91-CV-502, 1994 WL 118294, at *10 (N.D.N.Y. Mar. 21, 1994) (noting that

the existence of a personal guarantee "makes sense" as it was designed for "precisely th[e] contingency" at hand – that the primary obligor would be unable to meet its financial obligations) (quoting <u>Lone Star</u>, 811 F. Supp. at 149).

f.    The <u>In limine</u> Motion to Exclude the Guaranty

Defendant Anshelewitz argues that the copy of the guaranty should be excluded from evidence under Rules 1001, 1002 and 1003, Fed. R. Evid.  Rule 1002 provides "To prove the content of a writing, recording or photograph, the original . . . is required except as otherwise provided in these rules or by act of Congress."  <u>Id.</u> However, Rule 1001 defines an "original" document as "the writing . . . itself or any counterpart intended to have the same effect by the person executing or issuing it."  Rule 1001(3), Fed. R. Evid.  The undisputed facts are that a copy of the signed credit application, which also included a signature under the personal guaranty paragraph, was delivered to Wesco by Al's Best.  An "inked" copy of the credit application and personal guaranty was never provided to Wesco.  (Cope Aff't ¶ 12.)  Thus, the photocopied document presented to Wesco by Al's Best was intended by defendants to have the effect of an original.  <u>See</u> <u>United States v. Rangel</u>, 585 F.2d 344, 346 (8th Cir. 1978) (When photocopy rather than original is used as the operable instrument, photocopy deemed original under Rule 1001(3)).  Thus for purposes of Rule 1001, the copy of the credit application and the personal guaranty is an original.

Even if Anshelewitz did not intend Wesco to rely on the copy of the guaranty as an original, it is admissible under Rule 1003, Fed R. Evid.  Rule 1003 states that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."  <u>Id.</u>  Here, the Court has already

concluded that there has been no genuine question raised as to the authenticity of the guaranty. Thus, even if the photocopy of the agreement is deemed a duplicate, it is still admissible under Rule 1003. See Moretti v. Comm'r of Internal Revenue, 77 F.3d 637, 645 (2d Cir. 1996) (noting Federal Rules of Evidence provide for admission of duplicate when, inter alia, no genuine question of original's authenticity is raised notwithstanding the best evidence rule.).

Finally, under Rule 1004, Fed. R. Evid, secondary evidence can be used to prove the content of an original document if "[a]ll originals are lost or have been destroyed . . . [no] original can be obtained by any available judicial process or procedure; or . . . [a]t a time when an original was under the control of the party against whom offered, that party was put on notice by the pleadings or otherwise, that the contents would be subject or proof at the hearing, and that party does not produce the original at the hearing . . . ." Rule 1003(1)-(3), Fed. R. Evid.

Wesco never received the credit application and guaranty with ink signatures of either Chad or Al Anshelewitz. Through process prescribed by the Federal Rules of Evidence, Wesco has demanded production of all copies and the original of the guaranty from Al's Best and defendant Anshelewitz. (Cope Reply Aff., ¶ 24, Exh. N.) Neither produced any documents to plaintiff despite the litigation having been initiated and the document demands served prior to the filing of Al's Best's bankruptcy petition. (Cope Reply Aff't ¶¶ 18, 24, Ex. O.)

Because the copy of the guaranty may be admitted as an original, a duplicate, or as secondary evidence proving the content of the original, the motion to exclude it is denied.

III.    Conclusion

For all the foregoing reasons, summary judgment is granted in Wesco's

favor against defendant Anshelewitz for the principal amount of $150,498.40 plus service

charges.

Plaintiff is directed to submit a proposed judgment on notice.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       July 15, 2008